# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6962 | **DATE** | March 28, 2003 |
| **CASE TITLE** | | *Marshall v. Barnhart* | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the attached Memorandum and Order, plaintiffs' motion for reversal [16-1] is granted, in part, and defendant's motion for affirmance [17-1] is denied. The Court remands this case to the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The Clerk is directed to enter a Fed.R.Civ.P. 58 Judgment terminating this case.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | **Document Number** |
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | MAR 3 1 2003 | | |
| | Notified counsel by telephone. | | date docketed | | 24 |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | date mailed notice | | |
| RTS | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EILEEN MARSHALL, on behalf of McKINLEY PHILLIPS, | ) ) ) | |
| Plaintiff, | ) ) | **DOCKETED** |
| v. | ) ) | No. 01 C 6962    MAR 3 1 2003 |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | ) ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Eileen Marshall, on behalf of her minor son, McKinley Phillips, brings this

action pursuant to the Social Security Act, 42 U.S.C. §§ 1381 ("the Act"), seeking judicial

review of a final agency decision of the Commissioner of Social Security ("the Commissioner")

that denied Phillips' application for Supplemental Security Income ("SSI") under Title XVI of

the Act. Presently before the Court are the following motions: (i) Phillips' motion to reverse the

Administrative Law Judge's ("ALJ") decision and to remand to the agency for further

proceedings, and (ii) the Commissioner's motion to affirm the ALJ's decision. For the following

reasons, Phillips' motion to reverse and remand is granted, in part, and the Commissioner's

motion to affirm is denied.

### I.    Background[1]

#### A.    Procedural History

--------

[1] The facts in the Background section are taken from the Administrative Record which
includes a transcript of the proceedings before the ALJ and the evidence available to the ALJ at
the hearing.

On September 27, 1995, Eileen Marshall, on behalf of her minor son, McKinley Phillips, applied for SSI alleging that Phillips suffered from multiple mental disabilities including depression, a learning disability, and impaired social functioning. On November 20, 1995, the Commissioner denied Phillips' initial claim, and on January 30, 1996, denied Phillips' request for reconsideration. Phillips requested, and received, a hearing before an ALJ on February 23, 1998. Phillips was represented by counsel at the hearing. On January 29, 1999, the ALJ denied Phillips' request for SSI benefits, finding that Phillips was not "disabled" under the Act. On February 12, 1999, Phillips filed a request for the Appeals Council to review the unfavorable decision. On July 11, 2001 the Appeals Council declined Phillips' request for review. Accordingly, the ALJ's decision is the Commissioner's final administrative decision. Having exhausted his administrative remedies, Phillips now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## B.     The Administrative Hearing

Phillips was born on August 14, 1986. He was seven years old on his alleged onset date of disability, nine years old on the date of Phillips' initial filing of his application for SSI benefits, and eleven years old on the date of the hearing. At the time of Phillips' initial filing, he was in the fourth grade at Hughes Elementary School in Chicago. Phillips has always resided with, and been in the care of, his mother, Eileen Marshall. Phillips has never been gainfully employed.

### 1.     Marshall's and Phillips' Testimony

Both Marshall and Phillips testified at the hearing. Marshall testified that Phillips did not "get along" with his siblings. She testified that Phillips had been taking Motrin for headaches

2

since 1994. She stated that Phillips often failed to do his homework and would do his chores approximately half of the time. She said that Phillips spent the majority of his free time at home watching television and aggravating his siblings. Phillips occasionally would play basketball outside, however his play was limited because of recurring pain in his head and leg. She said Phillips did have a few friends.

Marshall testified that Phillips was, at the time of the hearing, attending special education classes full-time. Marshall stated that she had been contacted several times by Phillips' teachers regarding academic and behavioral problems, including disregarding instructions, a short attention span, and failure to attend the school's after-school tutoring program. Marshall also testified that when Phillips watched television, he often had difficulty following the program.

Phillips testified that he received after-school tutoring in math and reading three days per week. He said that his favorite subject was math. He stated that he "sometimes got along" with his siblings. Phillips said that he often forgot to do both his homework and chores. Phillips testified that he occasionally heard voices calling his name, and that he thought the voices were real. He testified that he spent his free time either watching television or sleeping.

## 2. Academic Records

Phillips' third-grade report card from the 1994-1995 academic year showed that he received primarily D's and F's in his core subjects. Phillips' report card further indicated that he needed improvement in the following areas: self-control, listening, following directions, completing assignments, doing homework, and putting forth effort.

An Individualized Education Program ("IEP") report from June 1995, following Phillips' completion of the third grade, indicated that Phillips' reading skills were at the third grade level

and his math skills were approaching the second grade level. The report recommended learning disabled classes for 400, out of a total of 1500, minutes per week. The report indicated that prior intelligence testing had demonstrated that Phillips was functioning in the low average intelligence range. The report noted that Phillips "got along" with his sibling, had a "fair relationship" with his classmates, and "played well with others."

On October 19, 1995, Phillips' fourth grade teacher, Ms. Audrey Ware, completed a School Activities Questionnaire ("SAR") with respect to Phillips. Ware noted that Phillips did not have any significant problems relating to his classmates or with his concentration on academic tasks. Ware reported that Phillips received one-on-one attention in some areas and that he received special help in reading.

An IEP report from February 1996 indicated that Phillips' reading skills were at the first grade level, and his spelling and math skills were close to the second grade level. Phillips' reported deficiency areas included: cognitive skills, auditory processing, long-term memory, visual motor skills and fine motor skills. With the articulated goals of improving Phillips' reading and math skills, the report recommended that Phillips' placement in learning disabled classes increase from 400 to 600 hours per week, then to 900, then to 1300 minutes per week the following academic year. Therefore, per the IEP's recommendation, beginning in September 1996, when Phillips was to start the fifth grade, he would be placed in a self-contained special education classroom for 1300 minutes per week. The remaining 200 minutes per week were allocated for other non-core curriculum such as art, gym, music and library, as well as lunch and recess.

Phillips' fourth-grade report card again reported primarily D's and F's in the core subjects

and indicated that improvement was needed in the following areas: completing assignments, participating in class activities, doing homework, and putting forth effort.

On January 7, 1998, Phillips' sixth-grade teacher, Joanne Abelman, completed another SAR for Phillips. She reported that Phillips was in a self-contained learning disability curriculum. Abelman reported that Phillips was functioning at the third grade level in reading and at the fourth grade level in math. She indicated that Phillips had a short attention span and rushed through his work. She graded Phillips' ability to work independently as "very poor." She noted that Phillips did not respond well to change or to constructive criticism. Finally, with respect to Phillips' behavior, Abelman reported that he had minor behavioral problems when interacting with peers, but generally was respectful of authority.

Phillips had another IEP assessment during the sixth grade, on January 27, 1997. The IEP report indicated that Phillips' deficient areas included: cognitive skills, auditory processing, long term memory, visual motor skills, fine motor skills and his relationship with his peers. Phillips' individualized program called for positive reinforcement, encouragement and praise, small groups, repeat directions and shorter tasks.

Phillips' report card for the sixth grade, or the 1997-1998 academic year, reported D's and F's in the core subjects of reading, writing, spelling and math. The report card indicated that improvement was needed in the following areas: listening, following directions, completing classroom work and completing homework.

### 3. Medical Evidence

#### a. Mental Impairments

In November 1995, Dr. D.G. Hudspeth, a Social Security Administration psychiatrist,

evaluated Phillips' records and opined that his impairments did not meet, medically equal, or functionally equal a listed impairment. (*See* Section I.D., *infra*.) Dr. Hudspeth opined that Phillips had a learning disability and was moderately impaired in his cognitive development. Finally, Dr. Hudspeth found no impairment in Phillips' communicative development, motor development or personal/behavioral development.

On January 23, 1996, a second Social Security physician, Dr. Donald McLean, reviewed Phillips' records and also concluded that his impairments did not meet, medically equal, or functionally equal a listed impairment. (*See id.*) Dr. McLean, like Dr. Hudspeth, opined that Phillips had a moderate impairment in cognitive development, and a less than moderate impairment in social development, and concentration, persistence, and pace. Dr. McLean found no impairment in Phillips' communicative development, motor development, or personal/behavioral development.

On February 6, 1998, when Phillips was in the sixth grade, his school referred him to the Community Counseling Centers of Chicago ("CCCC") for evaluation. Phillips was evaluated at the CCCC from February through the beginning of April. The assessment included an evaluation of Phillips by a psychiatrist, clinical interviews of both of Phillips' parents and Phillips' sixth grade teacher, as well as an observation of Phillips in his school classroom environment. At the time of this referral, Marshall had reported that Phillips was having behavioral problems both at home and at school. She reported that Phillips had mood swings and often became aggressive with his siblings. The counselor initially examining Phillips reported that he had a flat effect and that his attitude was guarded. Phillips' thought processes were tangential and his cognitive functioning was severely impaired. His judgment and insight were minimally impaired, and he

demonstrated a short-term memory impairment. Phillips was diagnosed with Oppositional Defiant Disorder ("ODD"), a non-specific learning disorder, and rule out Attention Deficit Hyperactivity Disorder ("ADHD"). Psychiatric and psychological evaluations were recommended.

On March 16, 1998, Phillips had his first CCCC counseling session. Marshall reported to the counselor that Phillips argued and fought with his peers, would not do his chores, "talked back" and experienced recurring headaches. The counselor indicated that Phillips should be evaluated for ADHD. The counselor developed a treatment plan for Phillips that included improving his academic performance, reducing his depressive symptoms, and decreasing his aggressive behavior. The counselor noted that Phillips appeared to be receptive to help.

On March 25, 1998, Phillips underwent a psychiatric evaluation. Phillips' complaints (likely articulated by Marshall) included: behavioral problems at school, poor grades, being quick-tempered and aggressive and chronic headaches. At the evaluation, the CCCC psychiatrist reported Phillips to be alert, well-oriented and cooperative. His mood, however, was reported to be depressed. Phillips was diagnosed with rule out dysthymic disorder, rule out learning disorder, and rule out migraine headaches.

On March 31, 1998, Phillips' CCCC counselor spoke with his sixth grade teacher. The teacher indicated that Phillips rushed through his assignments and would not allow himself to be taught. The teacher reported that Phillips "annoyed his peers and was immature." Based on this conversation, the counselor opined that Phillips needed a "reality check" concerning school, and that "he will probably drop out if he doesn't start to change now." On April 7, 1998, after visiting Phillips' school, the counselor recommended that Phillips' mother impose firmer limits

on him.

When speaking with a psychiatrist at the CCCC in August 1998, Phillips stated that he was sad and felt like crying for no reason. His statement was confirmed by the psychiatrist's own observation that Phillips appeared sad and isolated.

### b. Physical Impairments

In September 1997, Phillips was evaluated by Dr. Thomas Bahk for mild headaches. A subsequent CT scan of Phillips' head was negative. On February 16, 1998, Phillips underwent an MRI scan of his brain. Results showed extensive sinusitis, but no post-traumatic changes. Two days later, Dr. Bahk completed a questionnaire regarding Phillips' physical impairments. Dr. Bahk reported that Phillips had mild headaches secondary to maxillary sinusitis. Dr. Bahk summarized Phillips' prognosis as fair.

### C. Evidence Submitted to the Appeals Council Subsequent to the Hearing

An IEP prepared on May 21, 2001, when Phillips was in the ninth grade, indicated that Phillips had a learning disability, and that his general intellectual level was in the very slow to slower than average range. Phillips' reading and math skills were at the fourth grade level. Phillips indicated that he had difficulty managing his angry feelings and that he had an upcoming court hearing concerning an altercation he had with another teenager. It was recommended that Phillips obtain outside counseling to learn appropriate ways to manage his "sad and angry feelings."

The report noted that Phillips had "failed all of his classes," "is disruptive in class" and "has short term memory problems." The report concluded that Phillips had the following learning deficiencies: has difficulty following directions, processes information slowly, has a

short auditory attention span, is easily distracted, loses focus/concentration often, has difficulty following multiple verbal requests, is frequently distracted by extraneous noises and is disorganized and often misplaces things. Specialized instruction was recommended for English, math and science. Further attention to Phillips' attendance record was recommended, as Phillips often was truant.

### D. The Standard for Childhood Disability Under the Act

In August 1996, after Phillips' initial application for benefits but prior to the ALJ's decision, the eligibility standard for a child's disability benefits was amended by the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub.L. No. 104-193, 1996 U.S.C.C.A.N. (110 Stat.) 2105. In February 1997, the Commissioner published "interim rules" governing application of the 1996 regulation. *See* 62 Fed. Reg. 6408. On September 11, 2000, the Commissioner published the revised final rules for determining disability for children under eighteen, which became effective on January 2, 2001. *See* 65 Fed. Reg. 54,747. Phillips' hearing before the ALJ was conducted on February 23, 1998 and the ALJ's decision was rendered on January 29, 1999. The ALJ thus applied the then-current interim rules to his assessment of Phillips' claim.

Although it is not obvious that this Court's review of the ALJ's decision will too be governed by the interim rules, given that the final rules are now in effect, the Court finds the final rules themselves authoritative on this point: "[w]ith respect to claims in which we have made a final decision, and that are pending judicial review in Federal court, we expect that the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision." 65 Fed. Reg. 54,747. Accordingly, the Court gives

9

*Chevron*-deference to the Social Security Administration's interpretation of its own regulations (*see Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 739-42, 116 S.Ct. 1730 (1996); *Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 842-45, 104 S.Ct. 2778 (1984)), and reviews the ALJ's decision under the interim regulations, as those were the regulations in effect at the time of the ALJ's decision.

Under the interim regulations, a child shall be considered eligible for disability benefits if he or she has "a medically determinable physical or mental impairment or impairments, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted for a continuous period of not less than twelve months." *See* 65 Fed. Reg. 54,762. A determination whether a child is disabled requires a three-step sequential process. *See* 20 C.F.R. § 416.924(a). First, the ALJ must consider whether the child is engaging in substantial gainful activity, *i.e.*, working. *See* 20 C.F.R. § 416.924(b). If so engaged, the child will not be awarded benefits. *Id.* Second, the ALJ must evaluate whether the child has a medically determinable "severe" impairment. *See* 20 C.F.R. § 416.924(c). A severe impairment is one that is more than a slight abnormality. *Id.* Third, if the ALJ finds that the impairment is severe, the ALJ must consider whether the child's impairment meets, medically equals, or functionally equals the severity of one of the Commissioner's listed (and therefore, *per se* disabling) impairments. *See* 20 C.F.R. § 416.924. Only if the impairment is severe and meets or is medically or functionally equal to a listed impairment will it constitute a disability within the meaning of the Act. *See* 20 C.F.R. § 416.924(d).

Because Phillips challenges only the "functional equivalence" analysis in the ALJ's decision (*see* Sec. III., *infra.*), the Court's delineation of the statutory and regulatory framework

is correspondingly limited. In determining whether a child's limitation(s) is functionally equivalent to a listed impairment, the Commissioner uses four methods. *See* 20 C.F.R. 416.926a(b). The ALJ considers all four methods before determining whether a child's impairment is functionally equivalent to a disability in the listings. There is no prescribed sequence to these methods. *See id.* Under the first method, titled "limitation of specific functions," the ALJ will find that a child's impairment is functionally equivalent in severity to a disability in the listings if there is extreme limitation in one specific function, such as walking or talking. *See* 20 C.F.R. § 416.926a(b)(1). The second method – "broad areas of development or functioning" – is aimed at the effect of the child's impairment(s) in broad areas of development or functioning. *See* 20 C.F.R. § 416.926a(b)(2). This method requires evaluation in five categories of functioning: (1) cognitive/communicative functioning, (2) motor functioning, (3) social functioning, (4) personal functioning, and (5) concentration, persistence or pace. *See* 20 C.F.R. § 416.926a(c)(4). To establish functional equivalence, a child must suffer from a medically determinable impairment that result(s) in "marked" limitations in two of these six categories or an "extreme" limitation in one category. *See* 20 C.F.R. § 416.926a(b)(2). An "extreme" limitation means that there is no meaningful functioning in a given area. *See* 20 C.F.R. § 416.926a(c)(3)(ii)(C); a marked limitation is an impairment that is "more than moderate" but "less than extreme," and is present when the degree of limitation "seriously" interferes with the child's ability to function. *See* 20 C.F.R. § 416.926a(c)(3)(i)(C). The third method, "episodic impairments," evaluates chronic impairments that are characterized by frequent illnesses or attacks or by exacerbations and remissions. *See* 20 C.F.R. § 416.926a(b)(1) and (b)(2). Finally, the fourth method analyzes "limitations related to treatment or medication

11

effects." *See* 20 C.F.R. § 416.926a(b)(4). Phillips' arguments are cabined to the ALJ's analysis under the second method of determining functional equivalence – "broad areas of development or functioning." (*See* Sec. III., *infra.*)

### E.     The ALJ's and Appeal Council's Decisions

Under the above framework, the ALJ first found that Phillips had not engaged in work activity since he filed his application for benefits. On step two, the ALJ found that Phillips suffered from a learning disorder that was a "severe" impairment in that it more than minimally impacted his ability to function. On the third and final step, the ALJ, after addressing each method of functional equivalence evaluation, found that Phillips' impairment neither met, nor medically or functionally equaled in severity any listed impairment. Phillips, therefore, was found not to be disabled under the Act and therefore not entitled to disability benefits.

On appeal to the Appeals Council, Phillips submitted the above-mentioned 2001 IEP as additional evidence. On July 11, 2001, the Appeals Council found that the evidence did not provide a basis for reviewing the ALJ's decision. As such, the ALJ's decision became the final decision of the Commissioner.

## II.     Standard of Review

This Court's review of the Commissioner's decision is limited.[2] The Social Security Act, 42 U.S.C. § 405(g), requires the Commissioner's findings (via the ALJ) to be sustained if supported by substantial evidence. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Thus,

---

[2]Although the parties have styled their motions as motions for summary judgment pursuant to Fed.R.Civ.P. 56, motions seeking judicial review of the Commissioner's final administrative decision under 42 U.S.C. § 405(g) are more properly treated as motions for an order affirming or reversing the ALJ's decision. *See Valie v. Charter*, 916 F.Supp. 821, 823 n. 2 (N.D. Ill. 1996).

the Court will reverse the Commissioner's findings only if they are not supported by substantial evidence or if the Commissioner applied an erroneous legal standard. *Id. (citing Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). This Court reviews the entire administrative record, but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner. *Clifford*, 227 F.3d at 869. At the same time, the Court will not "simply rubber stamp the Commissioner's decision without a critical review of the evidence." *Id.* Ultimately, the issue before the Court, "is not whether [the applicant] is disabled, but rather, whether the ALJ's findings were supported by substantial evidence." *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

## III. Discussion

Phillips raises three arguments before the Court. First, Phillips challenges the ALJ's assessment of both Phillips' social functioning and his concentration, persistence and pace under the "broad areas of development or functioning" method of evaluating functional equivalence. Specifically, Phillips argues that the ALJ erroneously failed to assess Phillips' ability to function independently of his structured special education environment. Second, Phillips argues that the ALJ committed an error of law by failing to analyze uncontradicted medical evidence. Finally, Phillips claims that the Appeals Council erred in refusing to find that the 2001 IEP evidence submitted to it constituted "new and material" evidence requiring a remand to the ALJ for further consideration; alternatively, Phillips argues that this Court should find the evidence submitted to the Appeals Council "new and material" and remand. The Court addresses Phillips' arguments

in turn.

## A.     Environment for Evaluating Phillips' Impairments

Under the second method of evaluating functional equivalence – "broad areas of

development or functioning" – the ALJ found that Phillips' learning disability caused a "marked"

limitation in the cognitive and communicative functioning category, a "less than marked"

limitation in the concentration, persistence and pace domain, "no significant" limitation in the

social functioning area, and no limitation in either motor or personal functioning.

Phillips argues that the ALJ's determinations regarding his limitations in the domains of

social functioning and in concentration, persistence and pace were based solely on evidence of

his behavior within the highly structured setting of his special education classrooms.  Phillips

submits that this constituted an error of law because the regulations require that a determination

of whether a child's impairment is functionally equivalent to a listed impairment requires an

assessment of how the child performs activities independent of the special education curriculum

environment.  *See* 20 C.F.R. § 416.924a(b)(3)(i).  The regulations provide:

> A structured or supportive setting may minimize signs and
> symptoms of [an applicant's] impairment(s) and help to
> improve [the applicant]'s functioning while the [applicant is] in
> it, but [the] signs, symptoms, and functional limitations may
> worsen outside this type of setting.  Therefore, [the Commissioner]
> will consider . . . the degree of limitation in functioning [the
> applicant has] or would have outside the structured setting.  *Even if*
> *[the applicant is] able to function adequately in the structured or*
> *supportive setting, [the Commissioner] must consider how [the*
> *applicant would] function in other settings and whether [the*
> *applicant] would continue to function at an adequate level without*
> *the structured or supportive setting.*

20 C.F.R. § 416a(b)(5)(iv)(C) (emphasis added).  This requirement, in this Court's view, ensures

14

that a child's special education placement, with its built-in safety nets, will not artificially inflate an assessment of that child's functional abilities. The Commissioner acknowledges the regulatory requirement that children be evaluated outside the confines of highly structured educational settings, but submits that the ALJ *did* consider Phillips' functioning outside of his special education curriculum.

### 1.    Evidence Regarding Social Functioning

Evaluation of a child's social functioning capabilities requires an assessment of that child's "ability or inability to form and maintain relationships with other individuals and with groups." 20 C.F.R. § 416.926a(c)(4)(iii). Although much of the evidence before the ALJ was reports of Phillips' behavior at school, the ALJ was presented with, and made express findings based on, evidence of Phillips' behavior outside of his special education classrooms. The ALJ considered reports from Phillips' CCCC counselor which indicated that Phillips was able to control his behavior, would respond favorably to firm limits imposed by his mother, and was having some success avoiding negative interactions with his peers – all outside of the classroom. The ALJ expressly noted Phillips' statement to his CCCC counselor that he had recently ignored, opting not to engage, some boys who were harassing him.

Finally, the ALJ considered extensive testimony from Marshall regarding Phillips' behavior problems at home. Specifically, the ALJ expressly evaluated Marshall's testimony that Phillips frequently fought with his siblings, often failed to do his homework or chores, and heard voices. The ALJ, however, found Marshall's depiction of Phillips as an extreme behavior problem to be less than credible: "[t]he claimant's mother appears to have exaggerated her testimony in order to present her son's case for disability in the most favorable light," and "[t]he

15

claimant's alleged limitations were not fully credible, as they were not fully supported by the medical evidence or relevant credibility factors." The Court will not disturb an ALJ's credibility determination unless it appears "patently wrong." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001).

In contrast to Marshall's testimony, the ALJ found persuasive Phillips' teachers' indications that he generally "got along" with his peers and his counselors' statements that he responded favorably to firm limits. The ALJ also noted that the record contained no documentation from any of Phillips' physicians or counselors regarding any problems with hearing voices. The ALJ noted that Phillips had been diagnosed with ODD, but found compelling that Phillips had not been conclusively diagnosed with any attention deficit disorder nor any hyperactive disorder. The ALJ found that Phillips was not on any medications for any behavioral or mood disorders. Ultimately, the ALJ concluded that Phillips was having some success in controlling his behavior and "is dealing successfully with peer interactions." The Court also notes, though not expressly mentioned by the ALJ, that Marshall testified that Phillips does have some friends. *Dixon,* 270 F.3d at 1176 ("[The ALJ] is not required to address every piece of evidence or testimony. . .") The Court finds that the ALJ, consistent with his regulatory prescription, considered evidence of Phillips' social  behavior outside the confines of his structured special education classroom environment, and that the ALJ's conclusion regarding Phillips' social functioning was supported by substantial evidence.

The Court emphasizes that where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner,

16

and not upon the reviewing court (*Stuckey v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990)), and a finding may be supported by substantial evidence even if the reviewing court might have reached a different conclusion. *Delgado v. Bowen*, 782 F.2d 79 (7th Cir. 1986). Accordingly, Phillips' substantial evidence challenge here must fail, because the ALJ's finding with respect to Phillips' social functioning was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

### 2. Evidence Regarding Concentration, Persistence and Pace

The ALJ found a "less than marked" limitation in the area of Phillips' concentration, persistence, and pace. The regulations define the area of concentration, persistence and pace as the child's "ability or inability to attend to, and sustain concentration on, an activity or task, such as playing, reading, or practicing a sport, and the ability to perform the activity or complete the task at a reasonable pace." 20 C.F.R. § 416.926a(c)(4)(vi) The ALJ's conclusion regarding Phillips' concentration, persistence and pace rested on two factual findings: (i) that Phillips was "making progress in his school subjects" and, (ii) that his difficulties in concentrating at school did not carry over into the "other activities of daily living." Each of these findings is fundamentally flawed. On the first count, nothing in the administrative record supports the ALJ's finding that Phillips' academic performance had improved. If anything, at the time of the ALJ's review, during Phillips' sixth grade, his "progress" was in the wrong direction. The record indicates that the majority of Phillips' grades from his third, fourth and sixth grade report cards were D's and F's. Over the same time frame, the percentage of Phillips' curriculum constituting special education instruction increased. The CCCC counselor, after speaking with Phillips' sixth grade teacher, concluded that Phillips "will probably drop out of he doesn't start to change now."

17

In support of the ALJ's second conclusion – that Phillips' concentration problem did not manifest itself outside of school – the ALJ observed that Phillips "testified that he watches television during his free time [and] . . . [h]e also can concentrate well enough to play basketball." Phillips argues that the ALJ's findings here did not take into account Marshall's testimony that when Phillips watched television, he often had trouble following the program, and ignored Phillips' testimony that when he played basketball, he could only play for "a little bit" before his leg and head began to hurt.

Even if the ALJ discounted Marshall's testimony here as lacking credibility, he did not question Phillips' credibility regarding his problems playing basketball. And, even if the ALJ discredited Phillips' testimony as well, the Court, on a more fundamental level, finds Phillips' ability to stare at a TV screen or launch a round ball into a netted rim a slender reed upon which to rest the ALJ's conclusions regarding Phillips' limitations in the area of concentration, persistence, and pace.

Thus, with respect to the ALJ's findings regarding Phillips' functional limitations in the concentration, persistence and pace domain, the Court finds that the ALJ's decision cannot withstand substantial evidence review. The ALJ "failed to build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176. Thus, the Court remands to the Commissioner to make further findings regarding Phillips' concentration, persistence and pace. In making this evaluation, the Commissioner must consider Phillips' functional limitations outside the structured setting of his classroom. If the ALJ believes that he lacks sufficient evidence on this front, he must adequately develop the record, and, if need be, obtain expert opinions. *Clifford*, 227 F.3d at 873; *Green v. Apfel*, 204 F.3d 780 (7th Cir. 2000)("[T]he

procedure for adjudicating social security disability claims departs from the adversary model to the extent of requiring the administrative law judge to summon a medical expert if that is necessary to provide an informed basis for determining whether the claimant is disabled.")(citations omitted).

### B.  Failure to Analyze Diagnosis of Oppositional Defiant Disorder

Phillips also argues that the ALJ failed to analyze the CCCC psychiatrist's diagnosis of ODD. According to Phillips, a diagnosis of ODD requires the frequent occurrence of at least four of the following behaviors: (i) losing temper, (ii) arguing with adults, (iii) actively defying or refusing to comply with the requests or rules of adults, (iv) deliberately doing things that will annoy other people, (v) blaming others for his or her own mistakes or misbehavior, (vi) being touchy or easily annoyed by others, (vii) being angry and resentful, or (viii) being spiteful or vindictive. (Pl. Mot., p. 11 (citing Diagnostic and Statistical Manual of Mental Disorders, p. 91 (4th ed. 1994).) The behavior associated with ODD must lead to significant impairment in social, academic *or* occupational functioning. (*Id.*) (emphasis added).

Beyond an acknowledgement of Phillips' ODD diagnosis, the ALJ provided the court with no window on his analysis of the uncontroverted medical evidence. Perhaps the ALJ accepted the evidence, but found that the significant impairment the diagnosis requires involved Phillips' academic impairments, and not an occupational or social limitation. Under this hypothetical, the diagnosis would merely be redundant of the ALJ's finding of a "marked" impairment in the cognitive and communicative area. Perhaps, on the other hand, the ALJ rejected the diagnosis. The point is that this Court does not know, and will not prognosticate on the ALJ's evaluation of relevant and uncontradicted medical testimony. "An ALJ may not select

19

and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the ... court to trace the path of his reasoning." *Diaz*, 55 F.3d at 307. This requirement is highlighted where, as here, the record is devoid of any contradictory diagnosis. *Scivally v. Sullivan*, 966 F.2d 1070, 1076 n.5 (7th Cir. 1992) (citation omitted); *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) (ALJ may not, without adequate explanation, discount an ucontradicted, dispositive medical opinion). Although either an acceptance or rejection of the evidence might be consistent with the ALJ's conclusions regarding Phillips' disabilities, his failure to articulate *specific reasons* for accepting or rejecting the evidence leaves the Court with no opportunity for meaningful review. Accordingly, on remand, the ALJ shall make express his or her evaluation of the significance of the ODD diagnosis on Phillips' disability determination.

## C. The Appeals Committee's Refusal to Consider Additional Evidence

As part of Phillips' request for review of the ALJ's decision, he sent to the Appeals Council his IEP that was prepared on May 21, 2001. At the time, Phillips was in the ninth grade. The IEP reported that his reading and math skills were at the fourth grade level. The report noted that Phillips "has a problem managing his angry feelings and he has a court hearing on 5/23/01 due to an altercation that he had with a 16-year old boy." In addition, the IEP reported that Phillips had failed all of his classes, is disruptive in class, and has short term memory problems. Phillips was found to have the following problem areas: has difficulty following directions, processes information slowly, has a short auditory attention span, is easily distracted, has difficulty following multiple verbal requests, is frequently distracted by extraneous noises, is disorganized and often misplaces things.

Where, as here, the Appeals Council has denied review and the ALJ decision is the final decision, it is ordinarily improper for a court to consider new evidence not presented to the ALJ because "the correctness of that decision depends on the evidence that was before the [ALJ]." *Eads v. Secretary of the Dept. of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993). Nevertheless, pursuant to 42 U.S.C. § 405(g), a court may conduct a limited review of new evidence when the claimant alleges that the Appeals Council's denial of review rests on a mistake of law. *Eads*, 983 F.2d at 817; *see, e.g., Nelson v. Bowen*, 855 F.2d 503, 506-08 (7th Cir. 1988) (reversing because evidence submitted to the Appeals Council was not material to the disability determination). In the absence of any such error, the Appeals Council's decision whether to review is discretionary and unreviewable. *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997).

The regulations require the Appeals Council to review new evidence if the evidence is "new" and "material." *See* 20 C.F.R. §§ 404.970(b), 416.1470(b). Evidence is material if it "relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 416.1470(b). Phillips' May 2001 IEP, though new, is not material because it does not bear on Phillips' condition on or before the January 29, 1999 date of the ALJ's decision. Accordingly, because the Appeals Council did not commit an error of law in declining further review of Phillips' disability claim, this Court defers to the Council's discretionary decision to decline to do so.

D.     **Request for "Sentence Six" Remand**

Alternatively, Phillips requests "sentence six" remand under 42 U.S.C. § 405(g). The sixth sentence of the statute provides that a district court:

> may . . . remand the case to the Commissioner of Social
> Security for further action . . . and it may at any time order
> additional evidence to be taken before the Commissioner of
> of Social Security, but only upon a showing that there is new
> evidence which is material and that there is good cause for
> the failure to incorporate such evidence into the record in a
> prior proceeding.

42 U.S.C. § 405(g). Similar to the Appeals Council's review of materiality, under "sentence six"

remand, evidence is material only if it "relate[s] to the claimant's condition during the relevant

time period encompassed by the disability application under review." *Johnson v. Apfel*, 191 F.3d

770, 776 (7th Cir. 1999). Here, too, the materiality requirement defeats Phillips' request for

remand. Phillips' new IEP, prepared over two years after the ALJ's decision does not relate back

to Phillips' condition at the time of the ALJ's decision. Although the report provides evidence

that Phillips' problems have not abated, and perhaps have worsened, the Seventh Circuit

repeatedly has held that evidence of an aggravated or deteriorating condition after the date of the

ALJ's decision is not material for purposes of § 405(g) review. *Godsey v. Bowen*, 832 F.2d 443,

445 (7th Cir. 1987); *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1989) (denying request for

remand when "the reports postdating the hearing speak only to [the claimant's] current condition,

not to his condition at the time his application was under consideration by the Social Security

Administration"). As the Seventh Circuit noted in both *Godsey* and *Kapusta*, the materiality

requirement does not stand in the way of a fresh application for benefits premised on newly-

developed impairments. *See id.*

## IV.    Conclusion

For the foregoing reasons, plaintiffs' motion for reversal [16-1] is granted, in part, and

defendant's motion for affirmance [17-1] is denied. The Court remands this case to the Social

Security Administration pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The Court also recommends that the Administration transfer the case to a different ALJ on remand. *See Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

DATE: March 28, 2003

Blanche M. Manning
United States District Court Judge